| RUBY K. JOHNSON, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Ruby K. Johnson ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB on 29 December 2003. (R. 44-46). Claimant alleged disability beginning 25 September 2003. (R. 44). Her claim was denied initially and upon reconsideration. (R. 39-40). Following a hearing on 18 January 2006 before an Administrative Law Judge ("ALJ"), the ALJ issued a decision denying Claimant's claim on 19 April 2006. (R. 12-25). On 21 March 2007, the Appeals Council denied Claimant's request for

review. (R. 5-7). Claimant then filed a complaint in this Court seeking review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq*., is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

2

The claimant (1) must not be engaged in "substantial gainful activity," *i.e.,* currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA,* 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

This case involves step four of the evaluation process. Claimant alleges the ALJ erred in finding Claimant retained the residual functional capacity ("RFC") to perform past relevant work as a cashier-checker. Pl.'s Br. in Supp. of Pl.'s Mot. for J. on the Pleadings at 14, 24. (hereinafter "Pl.'s Br."). In particular, Claimant contends the ALJ failed to make specific findings regarding demands of Claimant's past work and failed to accurately describe Claimant's RFC. *Id.* at 18.

3

## FACTUAL HISTORY

### I.    ALJ's Findings

The ALJ's decision followed the sequential evaluation process, concluding at step four that Claimant retained the RFC to return to her past work as a cashier-checker. Accordingly, the ALJ found Claimant "not disabled" as defined in the Act.

At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) degenerative disc disease of the lumbar spine (2) a history of pelvic adhesions and (3) a history of syncopal episodes. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ also found Claimant had a nonsevere impairment of depression. (R. 18). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> [T]he claimant's depression causes her to have mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.    There is no evidence that she has had any episodes of decompensation, and the evidence does not establish the presence of "C" criteria.

(R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to (1) lift and carry 10 pounds frequently and (2) stand, walk and sit for up to six hours. (R. 19). The ALJ also identified the following non-exertional environmental limitations: no balancing, no working at heights or around dangerous machinery and no work requiring

4

operation of a motor vehicle. *Id.* at 19. In making this assessment, the ALJ found Claimant's statements regarding her limitations not fully credible based upon medical evidence contained in the record, testimony of the vocational expert ("VE") and Claimant's own statements regarding her daily activities. (R. 24). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a cashier-checker. (R. 24-25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 36 years old and unemployed. (R. 299-300, 302). Claimant resides with her husband and two children, ages 13 years old and 16 months old. (R. 300). The highest grade completed by Claimant is ninth grade. She has a General Educational Development certificate and is a Certified Nurse Assistant. (R. 301).

Claimant testified as to her work history. (R. 302-305). She was last employed by Holiday Inn as a laundry attendant, which entailed washing, drying and folding clothes. The job required standing throughout the day, lifting and carrying approximately 20 pounds and pushing a laundry cart of approximately 50 pounds. (R. 302). Claimant stopped working for Holiday Inn in September 2003 due to back pain. *Id.* Claimant also worked in a medical office. *Id.* Her responsibilities in this capacity included checking patients' vital signs, noting current medications and assessing their reasons for visiting the physician. (R. 303). Her position required standing throughout the day but no lifting. *Id.* Prior to her employment in the medical field, Claimant worked as a cashier for the Williamson Meat Farm, where she was responsible for entering prices manually into a cash register. *Id.* The job required lifting up to 15 pounds. (R. 303-304). Claimant also worked for Ithaca Industries as a "cut and close" operator, which entailed cutting and sewing elastic for underwear. (R. 304). This job required sitting throughout

5

the day and did not involve much lifting. *Id.* Prior to her employment with Ithaca Industries, Claimant worked at Dollar General as a cashier and, for approximately five months, as assistant manager. (R. 305). Her responsibilities as assistant manager included opening and closing the store, supervising approximately six employees, scheduling, and ordering and stocking store items. *Id.* Prior to her employment with Dollar General, Claimant pressed logos onto bathing suits, a job which required her to stand and to lift approximately 15 pounds. (R. 306).

Claimant testified to experiencing continuous back pain, which was eased somewhat with pain medication and the use of a recliner. (R. 307-308). Claimant stated further that she is unable to sit or stand for lengthy periods of time and her pain worsened when standing or walking. (R. 306-308). Claimant is unable to sit for more than 15 minutes and she can stand in one spot for approximately 10 to 15 minutes before requiring a break and can walk approximately half a block. (R. 308, 315). Claimant testified the pain impacts her ability to lift and carry and to bend forward at the waist. (R. 307). She stated she is able to lift approximately 5 to 10 pounds occasionally. (R. 315).

Claimant testified that a doctor suggested she undergo back surgery but warned her of the possibility that her condition could remain the same or in fact worsen. (R. 309). Claimant decided not to undergo surgery due to her pregnancy and a lack of medical insurance. (R. 310). Claimant stated further that she did not return to the surgeon following her pregnancy as she lacked the financial resources to pay for surgery. (R. 310-311).

As for other medical problems, Claimant testified to having depression, sleeping difficulties, arthritis in her back, knees and hands and experiencing blackouts on a daily basis two or three times a day. (R. 300-311, 313-314). Claimant testified that she takes Cymbalta for

6

depression and Remeron as a sleep aid. (R. 311). She further testified that she experiences forgetfulness, crying spells and an inability to socialize and to focus. Moreover, she spends the majority of the week in her bed clothes. (R. 311-313). Claimant's inability to focus and forgetfulness are exacerbated by her pain. (R. 311). She sleeps approximately two hours each night and is unable to sleep during the day. (R. 314-315). Claimant testified that due to her back pain, she is unable to lie down and must sleep sitting up in a recliner. (R. 308-309, 316). Claimant testified she is tired and not always alert. (R. 315). As a result of the blackouts, Claimant has suffered bruises and cuts on her arms and legs and has injured her head twice. (R. 313). Claimant testified her doctors advised her not to drive due to fainting episodes. (R. 300). Claimant testified to having problems gripping and holding onto objects as a result of her arthritis, which causes her hands to swell. (R. 314).

As for daily activities, Claimant testified to spending most days at home. (R. 312, 317). She washes dishes and, with her son's assistance, she does the laundry. (R. 316). Claimant does not clean nor does she perform any yard work. (R. 316-317). She cooks a couple of times a week but her husband maintains responsibility for grocery shopping. (R. 316). Claimant's driving is limited to occasional trips to the grocery store and taking her oldest child to school each morning. (R. 300). As for the care of Claimant's younger child, she receives help each morning and afternoon from her husband's grandmother. (R. 312). Claimant does not attend church. *Id.*

## III. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler, M.S. in Personnel and Counseling and Certified Disability Management Specialist (C.D.M.S.), testified as a VE at the administrative hearing. (R. 42-43,

7

317-321). After the VE's testimony regarding Claimant's past work experience (R. 318-319), the

ALJ posed the following hypothetical:

> If I have an individual who's limited to light work with no balancing or climbing, no working at heights or around dangerous machinery, and no work requiring driving a motor vehicle, would such an individual be able to perform any of the Claimant's past relevant work?

(R. 319). The VE responded such limitations would allow an individual to work as a cashier-

checker and a manager-retail operator. *Id.*

Claimant's counsel modified the above hypothetical as follows:

> I'd like you to assume...the Claimant can sit for only 15 minutes at a time, stand for no more than 10 to 15 minutes at a time, could walk no more than one half block and is limited to lifting no more than ten pounds. With just those limitations, would she be able to perform her past work?

(R. 320). The VE answered in the negative. *Id.* Counsel then asked the VE "to assume as a

consequence of pain and lack of sleep that [Claimant] has frequent interruptions of

concentration, persistence or pace several times an hour, brief, no more than five minutes." The

VE opined Claimant would be unable to perform her past work or any work. *Id.* Finally, asked

if any jobs exist that would allow Claimant to position herself in her recliner as described during

Claimant's testimony during the work day, the VE answered in the negative. *Id.*

## DISCUSSION

### The ALJ did not err in finding Claimant retained the RFC to perform her past relevant work as a cashier-checker.

Claimant contends the ALJ failed to (1) properly assess Claimant's credibility; (2)

accurately describe Claimant's RFC; and (3) make explicit findings regarding the physical and

mental demands required of Claimant's prior work as a cashier-checker. Pl.'s Br. at 16-23. This

Court disagrees.

8

**(a) The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends her impairments cause the following symptoms and limitations: (1) inability to sit, stand or walk for lengthy periods as a result of back pain and the resulting need to move about and lie down during the day; (2) inability to lift as a result of back pain; (3) blackouts at unpredictable intervals; (4) inability to sleep throughout the night; (5) inability to socialize; (6) problems with concentration and forgetfulness and (7) crying spells. Pl.'s Br. at 19-20, 23. However, the ALJ concluded Claimant's testimony was not entirely credible. This Court finds the ALJ's evaluation of Claimant's credibility is supported by substantial evidence.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. *Id.* at *4; *see* 20 C.F.R. § 404.1529(c)(4). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. SSR 96-7p, 1996

9

WL 374186, at *4. In addition to the objective medical evidence, the ALJ's evaluation of

Claimant's credibility must include the following factors:

(1)     effect of symptoms on claimant's daily activities
(2)     location, duration, frequency and intensity of the symptom(s)
(3)     factors that precipitate or aggravate claimant's symptoms
(4)     type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)     non-medical treatment received for relief of the symptom(s)
(6)     any non-treatment measures used to relieve the symptom(s)
(7)     other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings

in support of his credibility determination pursuant to the framework explained above. *See*

*Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding

credibility should be given great weight). The ALJ's finding was based on a lack of objective

medical evidence to support Claimant's subjective allegations.[1] (R. 24); *see Mickles v. Shalala,*

29 F.3d 918, 923 (4th Cir. 1994) (Luttig, J., concurring) (noting allegations of pain and other

subjective symptoms, without more, are insufficient to find disability); *see also Parris v.*

*Heckler,* 733 F.2d 324, 327 (4th Cir. 1984) (subjective evidence of pain cannot take precedence

over objective medical evidence or the lack thereof). First, regarding Claimant's alleged back

and leg pain from severe degenerative disk disease, the ALJ noted Claimant's December 2003[2]

---

[1] Claimant relies on *Hines v. Barnhart,* 453 F.3d 559 (4th Cir. 2006) to assert the ALJ erred in evaluating Claimant's subjective complaints of pain and other symptoms by requiring objective proof of such symptoms. Pl.'s Br. at 21. While *Hines* stands for the proposition that a claimant can rely exclusively on subjective complaints, *Hines* also explained that a claimant's allegations about her pain and other symptoms "may not be accepted to the extent they are inconsistent with the available evidence...." *Hines,* 453 F.3d at 565 (quoting *Craig,* 76 F.3d at 585).

[2] The ALJ identified this date as December 2004. (R. 24).

10

neurologic examination by Dr. Reeg, Claimant's spine specialist, was normal and Dr. Reeg's recommendation that Claimant should continue conservative management. (R. 24). In fact, Dr. Reeg referred Claimant to Vocational Rehabilitation with "no laundry work" as her sole limitation. (R. 21, 24, 137). Inexplicably, however, Claimant testified to the contrary, stating Dr. Reeg wished to perform back surgery on Claimant but deferred the operation because of Claimant's pregnancy. (R. 24, 309). Claimant's testimony is not supported by the medical record.

The medical evidence as reviewed by the ALJ showed also that Claimant had a stable gait, good range of motion of the hips, could walk on her tiptoes and heels and was able to squat and get to a standing position without difficulty. (R. 20-21, 137, 143-146). Furthermore, Claimant suffered no objective motor or sensory deficit, her straight leg raising was negative in the seated position and, although she had increasing back pain with extension, Claimant could forward flex within 12 inches of touching her toes. *Id.*

Second, regarding Claimant's syncope, Dr. Surkin, Claimant's cardiologist, asked Claimant to return if the syncopal episodes continued and to consider tilt table testing post-pregnancy. (R. 23-24, 185, 301, 321). While Claimant testified that she underwent tilt table testing, no such evidence is in the record. (R. 24, 301, 321). Moreover, the record contains no further medical findings by Dr. Surkin or any evidence that Claimant followed up with Dr. Surkin regarding this condition. (R. 24).

Third, in regard to Claimant's alleged depression, the record contains no objective clinical findings of this diagnosis. Rather, documentation concerning Claimant's mental impairment is limited to a single prescription of Cymbalta by Dr. McNeese in March 2005, the

11

remark that "she is a little better mentally" and the word "depression" in Dr. McNeese's October 2005 medical note. (R. 24, 277, 287-88). In her August 2006 two-page declaration, Dr. McNeese states, without reference to medical records, that Claimant is "severely depressed."[3] (R. 289). However, the above documentation is unsupported by clinical evidence wherein Claimant was found to suffer from clinically-proven depression. *See Craig*, 76 F.3d at 590 (stating a physician's opinion should be accorded significantly less weight if it is not supported by clinical evidence).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. *See* SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). Despite Claimant's testimony that she experiences syncopal episodes up to three times daily, she admitted driving occasionally to the grocery store and taking her child to school each morning. (R. 24, 300, 312-313). She continues smoking despite medical advice to the contrary. (R. 24, 172, 181, 185, 287). Regarding medication, the ALJ noted Claimant's back pain is eased by Methadone. (R. 19, 307). However, the ALJ points out Claimant did not indicate a beta blocker on her medication list - a medication suggested by Dr. Surkin if the syncopal episodes continued. (R. 24, 185). As for non-medical treatment, Claimant was

_____

[3] Subsequent to the ALJ's decision, Claimant submitted a declaration by Dr. McNeese to the Appeals Council. The Appeals Council considered this new evidence in declining to review the ALJ's decision. (R. 5-6). Because the Appeals Council incorporated Dr. McNeese's declaration into the administrative record (R. 8), this Court must consider the declaration in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

12

encouraged to attend physical therapy in April 2002 by Dr. McNeese, in October 2002 by Dr. Hardy[4] and in September 2003 by Dr. Kenny Nall. (R. 20-21, 89, 100, 110, 146). However, the record contains no evidence that Claimant underwent physical therapy. Moreover, as noted by the ALJ, Dr. Nall indicated that Claimant refused therapy. (R. 21, 89, 101). Finally, while acknowledging Claimant's alleged symptoms related to depression, the ALJ noted this impairment was first mentioned in a medical note dated October 2005 - two years following the onset of her alleged disability. (R. 23-24, 44, 288).

The ALJ considered Claimant's pain allegations to the extent that they were credible. Specifically, the ALJ found Claimant's back pain limited her to light work despite the state agency physical RFC assessment indicating Claimant could perform medium work. (R. 24, 153-160). Also, the ALJ limited Claimant to occupations requiring no balancing and no working at heights or around dangerous machinery due to her history of syncopal episodes. (R. 19). In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. For the foregoing reasons, Claimant's argument as to this issue is without merit.

**(b) The ALJ properly assessed Claimant's RFC.**

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Specifically, Claimant asserts that her back pain prevents her from sitting, standing or walking for prolonged periods and from lifting 10 pounds frequently. Pl.'s Br. at 19, 22. Furthermore, Claimant argues

---

[4] The ALJ attributed Dr. Hardy's physical therapy recommendation to Dr. Reeg. (R. 20). In October 2002, Dr. Hardy recommended Claimant attend physical therapy for a period of four to six weeks in order to work on a progressive strengthening, flexibility and conditioning exercise program for her back and legs. (R. 20, 145).

13

her non-exertional impairments are more severe than those identified by the ALJ. *Id.* at 22-23. Finally, Claimant alleges the ALJ erred in failing to consider her depression in assessing her RFC. *Id.* at 23-24. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite her impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). In determining RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In the present case, the ALJ's opinion demonstrates a detailed review of Claimant's medical history, providing a separate discussion of each impairment. *See Baldwin v. Barnhart,* 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a [claimant's] complaints of pain and level of daily activities.") (citations omitted). The ALJ's assessment also includes statements by Claimant found to be credible, in addition to testimonial evidence provided by the vocational expert. *See Hines,* 453 F.3d at 565 (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence).

14

First, the ALJ's assessment as to Claimant's ability to sit, stand or walk and to lift is supported by medical findings which indicate Claimant has a stable gait, a good range of motion in her hips, can walk on her tiptoes and heels, and suffers no objective motor or sensory deficits. (R. 20-21, 137, 143-146). The finding is also in accord with the RFC assessment by the state agency medical consultant. (R. 153-160). In fact, while the consultant found Claimant had the RFC to perform medium work, the ALJ reduced Claimant's RFC to light work activity given Claimant's level of pain. (R. 24). However, Claimant contends the 2-page declaration of her treating physician, Dr. McNeese, submitted subsequent to the ALJ's decision, supports a more limited RFC and thus merits a new hearing. (R. 20, 26). In her declaration, Dr. McNeese states Claimant cannot tolerate any form of work that requires an individual to stand or sit for prolonged periods of time. (R. 289-290). Dr. McNeese concludes further that Claimant is incapable of gainful employment until Claimant undergoes surgery. (R. 290).

Regulations promulgated by the Act afford a treating physician's opinion on the nature and severity of the claimed impairment controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In this situation, the ALJ may give less weight to the opinion of a treating physician in the face of persuasive contrary evidence. *See id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). While the "ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value," he is "not free, however, to simply ignore" such conclusions.

15

*Morgan v. Barnhart*, 142 Fed. Appx. 716, 722 (4th Cir. 2005) (unpublished disposition). Rather, the ALJ must "evaluate all the evidence in the case record to determine the extent to which the [treating physician's legal conclusion] is supported by the record." *Id.* (quoting SSR 96-5p, 1996 WL 374183, at *3).

In this case, Dr. McNeese's opinion is not supported by the record. First, Dr. McNeese provides no recent medical examinations supporting her opinion that Claimant is unable to sit or stand for prolonged periods of time. Dr. McNeese last saw Claimant on 6 October 2005 where she acknowledged Claimant's complaint that her back condition had not improved. (R. 21, 287). However, the October 2005 medical note provides no information as to gait, straight leg raising test, motor or sensory deficits or range of motion of the hips. In fact, the last medical examination addressing these conditions was conducted by Claimant's spine specialist, Dr. Reeg, on 30 December 2003, who noted Claimant had a stable gait, a good range of motion of the hips, suffered no objective motor or sensory deficit and her straight leg raising was negative in the seated position. (R. 137). Second, Dr. McNeese's opinion that Claimant required surgery is inconsistent with her 6 October 2005 medical note. (R. 287). Despite Claimant's complaint that her back condition had not improved, Dr. McNeese did not suggest surgery nor advise Claimant to return to Dr. Reeg. *Id.* Rather, as noted by the ALJ, Dr. McNeese recommended continued conservative treatment. (R. 24, 288). Finally, Dr. McNeese's opinion contradicts Dr. Reeg's findings in late 2003 and early 2004 wherein he advised Claimant to continue conservative management and concluded she was neurologically intact. (R. 137, 151); *see Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)(2) (providing that all evidence is weighed when a medical opinion "is inconsistent with other evidence or is internally inconsistent"). When viewed in its entirety,

16

the objective medical evidence and the subjective testimony of Claimant provide substantial evidence to support the conclusion of the ALJ.

Next, the ALJ's determination of Claimant's non-exertional limitations is in accord with the medical opinions of the two doctors who treated Claimant for syncopal episodes. (R. 172, 185). In particular, Claimant was advised not to drive or operate heavy machinery or perform activities where a loss of consciousness would constitute a risk to herself or others. *Id.* Accordingly, the ALJ found Claimant could not perform a job that required balancing, working at heights or around dangerous machinery, or operating a motor vehicle. (R. 19).

However, Claimant contends the ALJ failed to assess the frequency of Claimant's syncopal episodes and further asserts additional limitations are required as a result of her depression. Pl.'s Br. at 23. Regarding the frequency of syncopal episodes, the ALJ acknowledged the three episodes in 2004, in addition to several episodes in 1995. (R. 23, 170, 184). However, as explained previously, no further evidence exists regarding this condition with the exception of Claimant's testimony, which the ALJ found not entirely credible. (R. 22, 23, 313). Based on the record, the ALJ's findings as to Claimant's limitations resulting from her syncope are supported by substantial evidence. With respect to Claimant's depression, the ALJ acknowledged Claimant's testimony as to her impairments resulting from her depression; however, he concluded Claimant's allegations were not supported by the record. (R. 23-24). In fact, the record contains only two references to Claimant's depression - neither of which is supported by medical signs or laboratory findings.[5] (R. 24, 288-289); *see Craig*, 76 F.3d at 590

---

[5] The record as presented to the ALJ contained only one reference to depression. Claimant presented new evidence to the Appeals Council in the form of a declaration signed by Dr. McNeese wherein Dr. McNeese described Claimant as "severely depressed." (R. 289).

17

(stating a physician's opinion should be accorded significantly less weight if it is not supported by clinical evidence); *see also* 20 C.F.R. 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Moreover, as noted by the ALJ, the first medical reference to depression occurred in October 2005 - over two years after the onset of Claimant's alleged disability. (R. 24, 44). Given the lack of medical evidence supporting Claimant's subjective allegations as to the severity of her depression, the ALJ's finding that Claimant's depression did not preclude her from performing light work activity is supported by substantial evidence. (R. 24); *see* 20 C.F.R. 404.1529(a) ("[T]here must be medical signs and laboratory findings which show that [a claimant has] a medical impairment(s) which could reasonably be expected to produce the...symptoms alleged."); *see also Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983) (noting claimant's medical records did not show that any depression that claimant suffered was medically significant).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

**(c) The ALJ properly concluded Claimant could perform her past relevant work.**

Claimant contends the ALJ failed to make explicit findings regarding the physical and mental demands required of Claimant's prior work as a cashier-checker. Pl.'s Br. at 16. This Court disagrees.

18

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of claimant's past relevant work ("PRW") and then determines whether claimant's impairment(s) prevent claimant from performing such work. 20 C.F.R. § 404.1520(e)(f). "The claimant is the primary source for vocational documentation." SSR 82-62, 1982 WL 31386, at *3. In determining a claimant's ability to do PRW, the ALJ must consider the following:

(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;

(2) medical evidence establishing how the impairment[s] limit[] [his or her] ability to meet the physical demands and mental requirements of such work; and

(3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found "not disabled" if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207; *see also* SSR 82-61, 1982 WL 31387.

The ALJ found Claimant was capable of performing her PRW as a cashier-checker. The ALJ made the necessary findings in conformity with the guidelines listed above. First, the ALJ considered Claimant's allegations regarding her inability to sit, stand or walk for prolonged periods, her inability to lift more than 10 pounds, her blackouts at unpredictable intervals, her poor sleep quality, inability to socialize, problems with concentration and forgetfulness and crying spells resulting from her impairments. (R. 19, 22-23). However, as explained above, the ALJ concluded such statements were not entirely credible. Second, as summarized above, the ALJ reviewed the medical evidence regarding the impact of Claimant's impairments on her

19

ability to meet the physical and mental demands of a cashier-checker. Based on the medical records, the ALJ noted Claimant's impairments do not prevent her from standing, walking, sitting for 6 hours in an eight-hour day nor from frequently lifting or carrying 20 pounds. (R. 25). However, the ALJ found Claimant should avoid work that requires balancing, working at heights or around dangerous machinery and driving a motor vehicle. *Id.* Finally, the ALJ noted the DOT classified the job of cashier-checker with strength demands of light work. (R. 25).

Based on Claimant's RFC, the ALJ properly concluded Claimant is capable of performing her previous work as a cashier-checker. For the foregoing reasons, Claimant's argument as to this issue is without merit.

Claimant raises issues that arise within step five of the sequential disability analysis. Pl.'s. Br. at 24-26. However, the ALJ was not required to proceed to step five as he found Claimant was not entitled to benefits at step four of the analysis. *See* 20 C.F.R. § 404.1520; *see also Pass*, 65 F.3d at 1203. By affirming the ALJ's decision based on step four, this Court need not address the step-five issues raised by Claimant.

## CONCLUSION

For the reasons stated above, this Court recommends Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on

20

appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the

District Court.

This, the 12th day of March, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge